Kenyon, J.
William Huffman obtained judgment in the court ■of common pleas of Montgomery county ag-ainst Henry Runnecke and Henry Scheferling, for about five hundred dollars, loaned to Runnecke, for the payment of which money Henry Scheferling was in fact but surety.
An execution was issued on this judgment, and the sheriff levied upon various articles of personal property, consisting of horses, cattle, etc,, as the property of Henry Scheferling. The bill in this case was filed by Ernestine Scheferling, by her next friend, against her husband, Henry Scheferling, William Huffman, the judgment creditor, and others, claiming that the property thus levied upon was her property, and not that of her husband, and praying that the court might so decree, and enjoin Huffman from making sale of the property.
Huffman answers, denying that the property belonged to the wife, and claiming that it in fact belonged to Henry Scheferling, and was liable to be taken in execution for his debts.
Testimony was taken in the case on both sides, and on the ^hearing in the common pleas, the court found the equity in the complainant, and decreed a perpetual injunction. The defendant, Huffman, appealed, and the case was reserved by the district court of Montgomery for the decision of this court.
In support of the complainant’s exclusive claim to the property levied upon, she introduced and proved by proper evidence, that, in the year 1838, she entered into an ante-nuptial contract with •her present husband, Henry Scheferling.-
This contract was duly entered into before the proper court in *249 Germany, and was valid and binding in that country. The question of its validity in Germany was, by agreement of counsel, submitted to the German consul at New York, who decided that this was a legal and binding contract where made. The validity and interpretation of contracts are to be governed by the laws of the country where made.
When this contract was entered into, Ernestine was a widow of forty-two years of age, and her husband, Henry Seheferling, a man of thirty-two. She had property to the amount of several thousand dollars ; he had little or no property. She was the mother of five children by her first husband.
The contract, after reciting the various facts making it lawful to marry, has, among others, the following provisions: “ In regard to our property, we agree as follows : 1. That if I, Seheferling, should die first, my affianced Ernestine, shall inherit all my propertv, but if, at the time of her death, there should be children or descendants living from this marriage, she shall not deprive them of said property. 2. That if I, Ernestine, should die first, he, Seheferling, shall receive annually for his support, and in full satisfaction for all claims for property acquired during our marriage, (a) the little by-house for a residence; (6) the use of the piece of land on which the by-house stands ; (c) annually twenty himten of rye, weighing each from 48 to 49 pounds; (d) two himten of wheat, each from 53 to 54 pounds; (e) nine himten of barley, 42 pounds each; (f) 20 pounds of pealed barley; (g) 20 pounds of groats. If, however, he should marry *again, all these uses shall cease from the day of such marriage, and in that case he shall receive (a) one hundred thalers, if we should have been married five years ; (b) two hundred thalers if we should have been married ten years ; (e) four hundred thalers, if we should have been married fifteen years, and no more. Besides this, he shall have the use of his own property, but he shall not deprive the children which we may have of the same ; and he shall have no claim whatsoever upon my (Ernestine’s) own property, nor upon that which we may acquire during our marriage. Finally, I, (Ernestine,) in order to prevent contentions between my children of the two marriages, declare it is my will, that all the property which may be acquired during the continuance of this marriage, shall, after my demise, be divided in equal shares between my children of the first and this marriage.”
*250 Tho first question made on this contract is to determine its proper construction. It is claimed by the respondents, that this contract relates only to a disposition of the property at the time of the decease of either or both the parties; that the contract relates to. property which may bo in existence at the time of the death of one or the other of the parties, and not to the title during marriage. We think such is not tho proper construction of this agreement. It is provided that if she should die first, he shall receive certain things, in full satisfaction for all claims for property acquired during-marriage; and again, if she should die first, and he marry again, he should receive so many thalers, but should have no claim whatsoever on her (Ernestine’s) own property, nor upon that which they might acquire during their marriage. It is very evident from this contract, that if Henry Scheferling had tho j>ower under -it to dispose of Ernestine’s own property, and the property acquired during marriage, the whole object of the contract would be defeated, and there might be nothing left of any kind, and the contract might as. well not have been made. The language of the contract gives her, in equally as strong language, the control and disposition of the-property acquired during marriage as of her own property; and for his relinquishment of *that property, if she should die first, a full satisfaction was provided for him in consideration of ■such relinquishment. But, in construing this contract, we do not feel it necessary to determine to whom belongs the property which he might acquire during marriage with her own means exclusively.
When the parties came to this country, he had little or no property. She had several thousand dollars in money, with which were purchased real estate, and the title; to take that, Scheferling should have a fee simple estate in an undivided portion of tho land after tho death of Ernestine. She made the contract; she had the money and took the deed, according to her views of propriety and right; her money purchased all the personal property, such as household furniture and farming utensils, etc.; and if his labor should, to a-certain extent, bo mixed up in some of the products of the farm,, which have been seized in execution, it is very evident that her own. money and means are also mixed with his labor, and that she has some interest in these articles, which are proposed to be sold as his property. It is property which they acquired by her means and his labor, and which, we think, upon a fair construction of this, contract, belongs to her exclusively.
*251 It is however claimed, that by the sale of the by-house, etc., in Germany, and the conduct of the parties in this country, it maybe fairly inferred that they had abandoned the agreement. Ve are well satisfied, from the whole of the evidence, that the parties intended no such thing; that he considered her the owner of all the property, by virtue of the original contract, and consulted her, and, indeed, was wholly governed by her in all his sales and purchases; that he accounted to her for all the property he sold, of every kind, and that she furnished the money to make all the purchases.
Nor do we perceive that the execution of this contract in this country, according to the original intention, would interfere at all with the policy of our own laws.
*Henry Scheferling, when he entered into this contract, was capable of making such a contract. He considered that he had procured a sufficient consideration for agreeing to give her the whole of her own property, and all the property which they should mutually acquire during the marriage. He is still satisfied with that contract, and no good reason can be assigned why such contract should not be fully carried into execution as between the parties themselves.
Our conclusion is, that the property levied upon belongs to Ernestine.

Decree of injunction accordingly.